DAUKSCH, Judge.
This is an appeal from convictions for second-degree murder and carrying a concealed firearm.
Appellant urges this court to reverse the two convictions because the trial judge erred in failing to direct a verdict at the close of the state’s case and at the close of all the evidence. The record shows that defense counsel moved for a directed verdict only on the charge of second degree murder. In fact, in arguing the motion, defense counsel conceded “[t]he gun certainly was concealed and never even came unconcealed until the deceased pulled a weapon on him and threatened him at that time.” Since appellant did not move for a directed verdict on the charge of carrying a concealed firearm, he cannot raise this issue on appeal.
*224 The evidence of second degree murder is legally sufficient to sustain the conviction but there is some evidence to support the appellant’s contention that he acted only in self defense. The jury was not convinced by this self-defense evidence, obviously, but the jury may have been convinced if it had been permitted to hear the defense in its entirety. For some reason the trial judge felt it was warranted and permissible for him to inject himself into the trial and restrict the defendant in his testimony concerning his version of the events at the scene. It should go without saying, but in this case must be said, that an accused has an absolute right to tell his story of the events exactly as he remembers them without any restrictions by the trial judge. The jury has the right to hear and the duty to consider the accused’s version of the facts. This was not permitted here. As one example, the following colloquy occurred at trial where the accused was attempting to explain why he was fearful of the decedent and armed himself before encountering him. The accused wanted to tell about the decedent’s words and actions but was forbidden by the trial judge.
THE COURT: Why does he insist on saying, ‘Nigger’ and other things, just to outrage the jury, because we have two blacks on there? What has that got to do with anything? He is trying to say he got mad and armed himself to kill him?
MR. WILSON [Defense Counsel]: No, sir.
THE COURT: He is trying to prejudice this jury against the fact ...
MR. EARP [State Attorney]: My objection is there were hearsay events of threats or just hearsay events of accusing ...
THE COURT: You can say he made statements and acted like he was angry and don’t go on from there. I want to say to you again, your client takes that as an opportunity to go in and make his self-serving declaration. Your client is an intelligent witness, but he also has twenty years in the subways and a list of law enforcement training, so you can tell he is trying to justify his actions. He keeps stating what the law is and every time you ask a question, he tries to give it and I don’t blame him for doing it, but I am not going to allow it.
MR. WILSON: Am I allowed to ask him why, Your Honor?
THE COURT: Why, because in New York they wouldn’t have had that happened [sic]. That is okay, sure, but don’t give us a legal lecture on that. We know you have been in law enforcement for a long time and you know what sometimes juries like to hear, but we are here to find out what is legal and admissible by way of evidence in Florida in this case. The other point is this. I think it is irrelevant... you can say ... in the first conversation, that the result of a phone conversation or something, and the words we used, you could tell he was hot and so forth and so on, but you already said the word, ‘Nigger’ at least once in front of the jury and your uncle said it once or twice. Things like that. I don’t want to turn this into a situation black or white against black or white. We want to get the facts down. You can say he appeared angry. But we know we have two black people on the jury and we have some white people on the jury. Most of us aren’t prejudiced anymore, but I don’t want you to rekindle flames, by making this the point. Because if someone called you a ‘Nigger’ you think in your law enforcement career, that would justify you shooting somebody?
•BULLARD: No, sir.
THE COURT: Just like if you called me ‘Whitey’, or ‘Pinky’, do you think that would justify me pulling my gun and shooting you?
BULLARD: No, Your Honor.
THE COURT: Okay, the point is that that is before us now and we don’t want to talk about ... I want you to set the scene and that is why you were apprehensive, because the conversation you had, you could tell he was hot, and then you go on into the other things.
*225 MR. WILSON: Your Honor, he also said he was going to blow his black ass away if he didn’t get the car out of there.
THE COURT: If he didn’t get his car out of there.
BULLARD: No, not if I didn’t get my car out of there. If the car only got off his property and didn’t work, he didn’t want me to bring my black ass and say
[[Image here]]
THE COURT: Okay ...
BULLARD: Anything to him. If he heard a word from me, if I said a word, he was going to blow my black ass and that raggedy ass piece of car right off of his property. That is what he said, Your Honor.
THE COURT: Okay. That part, I am going to allow you to say. That part, but we don’t have to mention ‘Nigger’ and things like that.
BULLARD: Your Honor, this is a case pertaining to a very rich person, then one could refer to me as a peasant and if I repeated the fact that he called me a ‘Peasant’, would that ... do you consider that to inflame another peasant on the jury? I mean, isn’t it a similar situation?
THE COURT: Let me tell you something. The decedent is not here to talk with us, is he? He can’t tell us what he said. There is evidence and I can tell you are pretty intelligent and you can say what you want to say ...
BULLARD: I want to say the facts, sir.
THE COURT: I know, but sometimes
[[Image here]]
BULLARD: Just the facts, if I can, Your Honor.
THE COURT: You had a year to think about the facts.
BULLARD: No, if I said ...
THE COURT: Wait, Mr. Bullard.
BULLARD: Yes, sir. Yes, Your Honor.
THE COURT: You had a year to think about the facts. The evidence doesn’t support your view when you said he was a rich person, because the evidence as presented, that he wanted to sell that business and wasn’t doing too well.
MR. WILSON: Your Honor, he is not saying Gary Wright was a rich person. He was giving you an example ...
BULLARD: An analogy ...
MR. WILSON: An analogy of a rich person calling a poor person a ‘Peasant’, could he say the word ‘Peasant’. He wasn’t referring to the facts in this case.
THE COURT: Okay. You said that once. We don’t want to keep repeating it. Because it is irrelevant. Because what it will establish, I’ll tell you, Mr. Bullard, the law is to the effect that if someone called you a name on the phone, and it is a bad name, like if you were Chinese, a ‘Chink’, or if you were white and he was black, and called you ‘Whitey’, there is no justification to go down there and arm yourself ...
BULLARD: That is not why the guy got shot. The guy got shot because I was in fear of my life, of him taking my life. That guy didn’t get shot because he called me those derogatory statements.
THE COURT: So why do you want to keep bringing that up?
BULLARD: Because I thought you wanted to know what happened. The facts. The facts, Your Honor. If I should withhold these facts from the jury, I am willing to withhold them. I am.
THE COURT: Good. Because that is what the law is. Fine. Thank you.
MR. EARP: Judge, I have a second objection to some of this proffer and that was Mr. Bullard [sic] opinion as a layman that Gary Wright was acting irrational or might act irrational.
THE COURT: I agree with that. Don’t use the word ‘rational’. You could say he is excited and you could tell he was angry, because you can tell when someone is angry. You can tell when someone is excited. But unless you have and unless you have any psychiatry training in psychology, unless you qualify as an expert in that field, you can’t say irrational.
BULLARD: Well, Your Honor, I was afraid when I went to pick up my car that he might act in ... what should I *226 say, in an excitable manner when I did come to pick my car up? I was afraid he might act irrational when I ... that is one reason why I had to arm ... I felt compelled to arm myself.
Now, I thought he would act irrational. Now, I can use the word ‘excitable’.
THE COURT: And you can use the word ‘aggressive’ ... or you could use the word ‘aggressive’.
BULLARD: Well, Your Honor, if the Court wants to tell me to tell it in their words, I’ll use their words. If the Court wants me to put it ... to say the facts, I will state the facts; if the Court allows me, but I would state anything that the court directs me.
THE COURT: Mr. Bullard, that again fortifies my belief that he has had some legal training about this and he has been in that position. All I want you to say is what happened and I don’t want you to say anything that is not admissible under the laws of evidence and I have already told you what those were, and- don’t tell the jury the Court told me to tell you this, because I want you to say it like it is, because I am not under oath. Okay, ready? Bring the jury in.
MR. WILSON: Just before we do that, just so I know where I stand, too. As I understand, the Court has ruled that Mr. Bullard cannot use the word ‘Nigger’ again and must not use the word ‘irrational’ and cannot talk about ... I believe that is all.
THE COURT: He can’t give us his opinion on the law in New York.
MR. WILSON: He can’t give his opinion of the law in New York.
THE COURT: Number two, he can use the word, ‘black’ or what happened when he got to the scene, but I don’t want all the ad lib that happened a week before, okay? I don't want all that.
There is no question that a witness is not permitted to give legal opinions or tell about “the law in New York” without an extensive predicate being laid, which was not done here. The judge is correct on that point. Where the judge went wrong is in directing the accused not to use certain language, even though, according to the accused, that was exactly what was said at the scene. It is up to the witnesses, including the accused, to tell their versions of the facts and up to the jury to decide what is believable and what really occurred. It is not up to the judge to edit, censor or in any way change a witness’s testimony. So what if the words allegedly said are inflammatory? So what if distasteful language, or gruesome pictures or horrid accounts are put in front of the triers of the facts? If those circumstances are what a witness says occurred then so be it. A courtroom is often not the place for the genteel. It is a place where raw human emotions, grisly and morbid accounts and disgusting, filthy language are often brought forth. If the facts include these distasteful elements then they do. It’s the facts which count, not the sensibilities of the persons hearing them.
The accused was impermissibly restricted in his testimony, was denied a fair trial and must be tried again.
The conviction for carrying a concealed firearm is affirmed. The conviction for second degree murder is reversed and a new trial on that count is ordered.
AFFIRMED in part; REVERSED in part; REMANDED.
ORFINGER and COBB, JJ., concur.